ROCKINGHAM TEN CENT SAVINGS BANK v. PORTSMOUTH.

Under the statute of 1869, ch. 4, all the deposits and accumulations in
the several savings banks in this State, however such deposits and ac-
cumulations may be invested, are to be taxed to the banks; and such
taxes are to be paid to the State, in the first instance. And such depos-
its, &c., are not liable to any other tax.

Real estate owned by a savings bank, and purchased with the deposits
and accumulations of the bank, is not, under said statute, subject to tax-
ation as real estate in the place where the same is located.

A fundamental principle in taxation is, that the same property shall not
be subject to a double tax payable by the same party.

Thus, when it is decided that a certain class or kind of property is liable
to be taxed under one provision of the statute, it follows, as a legal con-
clusion, that the legislature could not have intended that the same prop-
erty should be subject to another tax.

This court has no jurisdiction by bill in equity to restrain a town or
the collector thereof from the collection of a tax which is illegally as-
sessed, as the party has a plain and adequate remedy at law.

An application for abatement is the proper remedy in such cases, not
only when the assessment is made upon an over valuation, but also when
the whole assessment is illegal.

A bill in equity, one of the prayers in which (with others) is that the
court will abate the tax, may be considered and treated as a simple
application for abatement, if the necessary preliminary steps have been
taken.

IN EQUITY. This cause having been tried by the court at the Oc-
tober trial term, 1871, the following facts were found:

The plaintiffs are a banking corporation, holding all their deposits,
funds, and accumulations in trust for depositors. By the provisions
of their charter, granted July 5, 1867, the corporation is declared to
be " capable of receiving and holding such buildings and real estate
as shall be necessary and convenient for managing its affairs ; provided
such real estate, held at any one time for such purposes, shall not ex-
ceed in value, at the time of the purchase or acceptance thereof by said
corporation, the sum of ten thousand dollars." In the year 1869 the
plaintiffs purchased the two lots of land described in the defendants'
answer to the plaintiffs' bill, paying therefore $6,550 from the deposits
and accumulations of said bank ; and the same, with the improvements
thereon, hereafter mentioned, have ever since been held and are now
held by the bank in trust for the depositors, as property acquired by and
derived from the deposits of their depositors and the accumulations
thereon. The principal lot, purchased at the cost of $6,000, contained

at the time of said purchase a brick store, four stories in height, fronting on Market street. The other lot, subsequently purchased at the cost of $550, is directly in the rear of the main lot, and by its purchase the plaintiffs acquired all the land extending from the rear of the main lot to Penhallow street. Before the purchase of the back lot, the plaintiffs had no means of communication with Penhallow street except by a right of way from the rear of the former lot to said street. At the time of its purchase, it was intended that the rear lot should be kept clear from any erection of buildings thereon, and retained by the plaintiffs, in order to avoid the obstruction of their light, and to afford extra security against fire; but the plaintiffs have since considered that it is expedient, and they propose to sell a portion of it, reserving a passage-way to Penhallow street. It was not only convenient, but it was essential that banking-rooms and a safe or vault should be provided for the use of the bank, in place of the inconvenient and unsafe provision for the custody of the funds and the conduct of the business, which was afforded prior to the purchase of this property; and the purchase of all the aforesaid property was regarded by the trustees as a legal, prudent, and economical investment of their trust funds. Shortly after the purchase, the plaintiffs began to remodel the old building, converting it into three stories instead of four, the intention at first being to use the whole building for no other than banking purposes; but finding that the whole building would not be required for such uses, it was deemed practicable and expedient to construct rooms to be rented for offices in the upper portion of the building. This intention, however, was finally abandoned, and the ultimate determination, which was carried out, was, to convert the second and third stories into a dwelling-tenement,—the trustees considering that such occupation would promote the safety of the funds and securities of the bank, and enable the corporation to dispense with the services of a special watchman. With this view the bank vault, subsequently built, was so constructed as to cause the sound of operations about the safe therein contained to be communicated to the rooms intended for the occupation of the family above. A small room was also constructed in the rear of the main building and adjoining thereto, communicating by a stairway with the upper portion of the main building, and used in connection therewith for a cooking-room. The upper rooms, and this small room in connection therewith, have been occupied ever since November, 1870, by the family of Mr. Rand, one of the trustees, at the rent of $225 per year. One Whittemore occupied the same premises a little less than three months, just preceding Mr. Rand, paying rent to the bank therefor at the rate of $350 per annum. The rest of the building is used exclusively for banking purposes. The repairs upon the building were so far completed that the plaintiffs commenced the occupation of the same as a bank in September, 1870. Some small bills relating to the repairs and the construction of the vault remain unsettled, but the expense of the whole operations connected with this property is substantially as follows:

Price paid for all the real estate and building at the time of the purchase, $6,550; for expense of altering the building to fit it for the use of the bank, $4,881.32; for an iron and steel safe, $3,800; for building foundation of stone for safe and for surrounding brick work, $486; for counters, gas fixtures, &c., $682.56; total, $16,399.88. Nearly all these expenditures, except the price paid for the original purchase of the real estate (viz., $6,550), were incurred after the assessment of the tax hereinafter named.    On April 1, 1870, the city of Portsmouth, by their assessors, appraised the real estate of the plaintiffs (being the same land and buildings heretofore described), for the purposes of taxation for the year 1870, at $5,000, and assessed a tax thereon for that year of $122; and the defendants claim the right and intend to inforce the collection of said tax.    The assessment was in legal form, duly and properly made, and the bank is liable to pay the said tax unless exempted therefrom by law.

The plaintiffs have complied with all the provisions contained in sections 1 and 2 of chapter 4 of the laws of this State, and the statement of the deposits and accumulations of said bank, made in compliance therewith, contains and includes the deposits, &c., which have been invested in said real estate and building, and the expenses aforesaid, so far as the same had been then incurred.    The State treasurer, in compliance with the provisions of section 14, chapter 58 of the General Statutes, has paid to the defendants the sum of $500, as such part of the tax paid to the State treasurer by the plaintiffs as aforesaid, as was in proportion to the amount of the deposits and accumulations of said bank, held by residents of Portsmouth, April 1, 1870, and the defendants have received and retain the same.    The whole amount of the deposits and accumulations of the bank, on April 1, 1870, including the amounts invested in the real estate and furniture of the bank building aforementioned, was $218,562.44; of which sum $123,993.33 were the deposits and accumulations of residents of Portsmouth. The court finds, as matter of fact, that all the buildings and real estate and furniture of said bank, including its safe and vault, are convenient for managing the affairs of the bank; but that the rear lot, and small addition to the rear of the main building, and the tenement in the upper part thereof, are not necessary for that purpose; and that the said property, in the aggregate, exceeds in value the sum of $10,000, and is of the value of $16,399.88; but that the same did not exceed in value the sum of $10,000 at the time of the assessment of the tax.

The plaintiffs, by their bill, pray the direction of the court in the premises, and that the defendants may be enjoined from collecting the tax assessed by them; or, that they be required to refund to the plaintiffs such sum as they have already received from said taxes, through the State treasurer, more than they should have received by reason of the premises; or, that they abate such portion of said tax, or all thereof, as may be just, and for general relief.

And for specific direction, order, or decree in the premises, the case and the questions of law therein involved were reserved for determination by the whole court.

*Goodall*, for the plaintiffs.

The main question which the parties wish decided in this suit is, whether the plaintiffs can hold any real estate under their charter and the statutes of this State, free from local taxation : in other words, whether the plaintiffs can invest of their deposits and accumulations in a banking-house and appurtenances ; and if so, to what extent free from local taxation.   Now, it appears that the charter provides that the corporation is capable of purchasing, receiving, and holding such real estate as shall not have cost, at the time of the purchase, over the sum of $10,000.   The case finds that this lot cost but $6,550 at the time of the purchase thereof by the bank.   It also appears by the case that the purchase money was paid from the deposits and accumulations of said bank, and that the same has been and is held by the bank as property acquired by and derived from the deposits and accumulations. It further appears from the case that " it was essential that banking-rooms, and a safe or vault, should be provided for the use of the bank," &c.   Also, the building was all bought at first for a banking-house, and all to be used as such.   The case finds that the trustees did view it as a " legal, prudent, and economical investment of their trust funds."

We say the charter has given that discretion to the trustees, and when exercised it is not to be subject to revision unless some fraud or wrong intention has been connected therewith.   Here the trustees viewed it as all legal.   Therefore we say, that the finding of the court, that, although " all the buildings and real estate    *    *    *    are con-venient    *    *    *    the rear lot and small addition    *    *    *    are not necessary," &c., is a finding in a matter not in the power of the court to revise, in the absence of fraud or wrong practice on the part of the trustees.   Of what use are their discretion and judgment, if the opinion of others can set aside their opinion ?

Now, if the bank were to close up to-morrow, what would this land be considered to be ?   Would it not be deposits and accumulations to be divided amongst the stockholders ?   Deposits and accumulations may be in foreclosed mortgages of real or personal estate, in debts collected by set-off of real estate, and in a thousand ways.   The in-tention of the statute was, not to have a changing taxation, but for the tax to be uniform upon every deposit and every accumulation.   It could not have been the intention to tax a deposit and accumulated interest on a mortgage note up to time of foreclosure at one per cent., and then, as soon as foreclosed, to tax it at two or two and a half per cent. It was none the less a deposit and accumulation of the said bank in real estate.   They can accumulate in real as well as personal.   The law was intended to reach every kind of deposit and accumulation.   It is not confined to accumulation of personal property, or stock, or lands, but is " the whole amount of deposits and accumulations due to the depositors in each town in the State separately, and the whole amount due to depositors not resident in the State.   Gen. Stats., ch. 58, sec. 12.

Now, is not the amount invested in this real estate " due to the depositors ?"   Is not the price of this estate a portion of " the whole amount of deposits and accumulations due to depositors ?"   But one answer can be made to this.   It is due to the depositors, and is a part of the whole amount.   Then, by section 12, chapter 58 of the General Statutes, the law is imperative on the treasurer to transmit it to the secretary of State.   None of it could or can be left out,—not one dollar of what is due the depositors of any accumulation or deposit, whatever form that accumulation takes.   It is nevertheless an accumulation due the depositor, whether in the form of real, personal, or mixed property.

If the plaintiffs are correct in this view, then the next step is to pay the tax " on the whole amount of the deposits and accumulations." Gen. Stats., ch. 58, sec. 13.   Section 12 shows what " whole amount" is referred to, and how it is to be found.   The bank are to pay the tax on the said " whole amount of deposits and accumulations" of property, real, personal, and mixed, " due the depositors."   Now, if the plaintiffs are correct in their view of the statute, " no other tax shall be assessed on said deposits and accumulations" due to the depositors, or against the depositors on account of said deposits or accumulations, whether real, personal, or mixed, or whatever form said property may have assumed, or into whatever property said accumulations have legally come by foreclosure of mortgages, by attachment and set-off, or by purchase of real estate under and in accordance with the charter and statute.   Gen. Stats., ch. 58, sec. 13.   Now there can be no doubt the legislature have power to declare what property is or shall be taxable and what not, provided they make equal taxation.   They can and do exempt certain animals or certain carriages under a certain value, or tax all over a certain value.   No property can be taxed unless allowed by the statute laws.   Colleges and academies, railroads, charitable and trust institutions, are allowed to hold property free from taxation, by express statutes and charters for the public good, and such property is not and cannot be taxed.   Our General Statutes, chapter 49, sections 2 and 4, and part of sections 5, 6, and 9, provide for many cases ; and then special charters, like those of savings banks, provide for many others.   Now, the clause enabling the bank to " receive and hold such buildings," &c., would be entirely inoperative, unless they can receive and take it by means of their deposits and accumulations, for that is all the means they can have.   They can " purchase and accept" the same, if it does not exceed $10,000 in value at the time of purchase.   If not to be purchased from deposits and accumulations, how can they do it ?   If the plaintiffs are correct, then, in their view, by the last clause of section 13, chapter 58, General Statutes, no other tax can be put upon this real estate more than there could be put upon the depots and tracks of railroads, which cannot be taxed.   Gen. Stats., ch. 49, sec. 4.

No property is liable to double taxation.   *Savings Bank* v. *Nashua,* 46 N. H. 398.   The opinion in that case on the points in controversy

here is not applicable, because the legislature have made a radical change in the law in various respects. In August, 1864, after the assessment in the Nashua case, a new law was passed entirely altering taxes on savings banks. Trouble had arisen in the Nashua case by the assessment of a tax, and the legislature undertook to settle the whole thing by a certain tax and no other. No decision has ever been made on the amended law. It steers clear of many of the points raised in the Nashua case, and, we say, was intended to go to the root of the whole matter and have but one tax. As the law then was, the court did not agree. The reasoning in that case cannot apply here. Here is a " tax on all the property ;" there, a single tax on but little if any of it. 46 N. H. 408. Here the " intention of the legislature is clearly manifested ;" there it was not. Here it is not a doubtful provision ; there it was. There is no escaping the view that we must pay a tax on all due depositors, and that includes now $16,000 and over, in this land ; and if the land is taxed, the bank does and must pay both taxes, and it amounts to double taxation.

It seems to us the law is simple and plain, and it is only by attempting to deny its plain provisions that trouble arises.

If the court will call an accumulation an accumulation, and will decide what the legislature enact, then it will be plain sailing ; but if they decide that the legislature meant to say that in case a bank should have all their deposits in one huge mortgage of $100,000, and that mortgage should be foreclosed, that in that case, although there are depositors in number 10,000, in varying sums amounting to just $100,000, yet no return is to be made to the State treasurer, because, forsooth, nothing is due depositors, then, to be sure, we should be in a sea of darkness, and the law would be foolishness. A tax of one per cent., to be paid on amount due depositors—and $100,000 would be due them, which tax must be paid because that amount is due—but yet there are no deposits or accumulations in the bank, because the deposits and accumulations are all in form of real estate, and real estate is not deposits or accumulations.

The statute makes no discrimination as to the form the accumulations take. If they are accumulations due the depositors, they must be returned to the State treasurer and taxed. It would be an accumulation if invested in bonds, notes, stocks, or mortgages. By what authority or power are the court to say that the accumulation is no longer an accumulation because invested in real estate under the charter ? The fact is, the charter and statutes have provided—1. For the deposit. 2. That deposit and accumulations all belong to depositors. 3. That deposits and accumulations and profits may be invested in notes and real estate security, liable to be foreclosed, and in a bank building, &c. 4. That these deposits and accumulations, *i. e.*, profits and income, in whatever form they have come to in pursuance of the charter, are *investments and all due depositors*. 5. That all must be returned to the secretary of State, whatever form they may have attained, as all are due depositors under the charter by its express pro-

visions. 6. That a tax of one per cent. shall be paid thereon. 7. And that no other tax shall be put thereon. The first four are provisions of the charter; the last three, of the statutes applied to the charter.

It is no more inconvenient that a savings bank, which is a public benefactor, should hold its bank building free from local taxation, than that a railroad should hold its depots free from taxation. There is no danger that any large amount of property will ever be thus exempted from local taxation, as the bank building can be but small, as the charter provides for only a small purchase, and the foreclosure of mortgages will probably be nothing, as banks loan at so small a value that there can be but little danger that any mortgage will ever be allowed to be foreclosed. But the legislature intended a safe rule,—of a tax of but one per cent. on all the property of savings banks, in order that no excessive taxation might ever be placed on any part thereof by any local taxation.

*Bartlett* and *Howard,* for the defendants.

The plaintiffs in this case were, by their charter, capable of receiving and holding such buildings and real estate as were necessary and convenient for managing their affairs, not exceeding in value the sum of $10,000 at the time of the purchase. They can hold no other or different real estate than by purchase under their charter, or by the laws of the State.

Were the real estate and buildings necessary and convenient for managing the affairs of said bank? They must be both necessary and convenient, in order to comply with the provisions of the charter authorizing them to hold real estate. The court have not so found.

The question to be determined by the court is, whether this real estate is subject to local taxation. This real estate is situate in Portsmouth, is occupied by the plaintiffs who claim to own the same. Real estate shall be taxed in the town where situate, to the person claiming the same. Gen. Stats., ch. 50, sec. 11. This has been done; and the court found that the assessment was in legal form, duly and properly made, and that the bank are liable to pay the same unless exempted therefrom by law. This real estate was not held by said bank in pursuance of the provisions of their charter. The court have found that a portion of the same was not necessary for managing the affairs of the bank.

Such being the fact, as found by the court and the trustees themselves, then that part of the real estate which was not necessary and convenient for banking purposes was liable to local taxation, and it was the duty of the city assessors to assess the same.

If only the excess of the real estate over and above that which is necessary and convenient for managing the affairs of the bank is liable to taxation, then the tax complained of is an over taxation, and the remedy of the plaintiffs was by an application to the proper authorities of the city for an abatement. This was their only remedy, and has

never been done. The plaintiffs having mistaken their remedy, the bill should be dismissed. Gen. Stats., ch. 52, secs. 10, 11; *Osborn* v. *Danvers*, 6 Pick. 99; *Howe* v. *Boston*, 7 Cush. 273; *Bates* v. *Boston*, 5 Cush. 93; *Lincoln* v. *Worcester*, 8 Cush. 55; *Brewer* v. *Springfield*, 97 Mass. 152.

Deposits and accumulations of a savings bank are personal estate, and are so to be considered, so far as taxation is concerned, until the same is changed by being invested in real estate, and the real estate made subject to taxation. *Savings Bank* v. *Nashua*, 46 N. H. 399.

We contend that no tax can be legally assessed except it be a proportional tax upon all estates. Const. N. H., art. 5. All public charges of government, in any part thereof, shall be assessed on polls and estates in the manner which has heretofore been practised, &c. Const. N. H., art. 6.

In what manner were taxes assessed prior to the adoption of the present constitution ? By the provincial laws, the selectmen of towns were empowered to assess the lands and estates within the bounds of such towns in a just and equal proportion. N. H. Prov. Laws, ch. 2, sec. 5, p. 138, ed. 1771. The act of July 2, 1776, enacted that no colony, town, or parish tax should be held legal if not proportional—Acts and Laws of N. H., ed. 1780, p. 6 ;—see, also, N. H. Laws, 1789, p. 212— except excise and revenue taxes. See N. H. Provincial Laws, ed. 1771, p. 109; Acts & Laws of N. H., ed. 1780, p. 142; Laws of N. H., ed. 1789, p. 145. There is no law of this State making personal property generally liable to taxation. It is only such as is specifically enumerated in the statutes which is so liable. The defendant contends that the levying a tax of one per cent. upon all the deposits and accumulations of savings banks cannot be sustained under the constitution of the State, except as an excise or license tax, or a bounty for doing business as a bank. *Savings Bank* v. *Nashua*, 46 N. H. 389; *Portland Bank* v. *Apthorp*, 12 Mass. 252; *Commonwealth* v. *Savings Bank*, 5 Allen 428; *Commonwealth* v. *Hamilton Manufacturing Co.*, 94 Mass. (12 Allen) 298; *Providence Institution for Savings* v. *Boston*, 101 Mass. 575; *Jewell* v. *Boston*, 101 Mass. 575; *Insurance Co.* v. *Loud*, 99 Mass. 146.

The legislature only intended that there should be no other excise tax assessed against savings banks.

It cannot have the extended application contended for by the plaintiffs, as it would repeal the law for the taxation of real estate, and thereby tend to confuse and unsettle the whole system for the taxation of the same.

SARGENT, J. The case finds that the plaintiffs are a savings bank, duly incorporated, at Portsmouth, in 1867, having the right by their charter to receive and hold buildings and real estate, such as shall be necessary and convenient for managing their affairs, not exceeding in value, at the time the same is purchased or accepted, the sum of $10,000. In 1869 the bank purchased real estate, at a cost of $6,550, from the

deposits and accumulations of said bank, and the purchase was deemed by the trustees as a legal, prudent, and economical investment of their funds. The bank soon began to make improvements upon said land, which have been continued until the real estate is now worth $16,399.88; but nearly all of said improvements have been made since the tax in question was assessed.

In 1870 the city assessed a tax upon this real estate, which is all located in Portsmouth, of $122, the estate being valued in the inventory at $5,000. We do not understand that any complaint is made that there was any over-valuation of this estate in the inventory, as compared with the valuation of other real estate in Portsmouth. No objection is made to the legality of the assessment, provided the real estate is liable to be taxed in Portsmouth.

The plaintiffs have complied with the requirements of the law, as contained in secs. 1 and 2 of ch. 4 of the laws of 1869, which provide that the treasurers of savings banks shall, on or before the first day of May, transmit to the State treasurer a statement, under oath, of the amount of all deposits and accumulations in their respective savings banks on the first day of April next preceding, with the names of the towns where the depositors reside, and the aggregate of deposits in such towns, and of the amount of the deposits and accumulations by persons not resident in this State; and that each bank shall pay to the State treasurer, on or before the 15th day of June, one per cent. on the whole amount of such deposits and accumulations — and claim the benefit of the remaining provision of the same statute, to wit, that " *no other tax shall be assessed on said deposits and accumulations, or against its depositors, on account thereof.*"

This bank, having paid this one per cent. on the whole amount of their deposits and accumulations, claim that they cannot be taxed for their real estate which has been purchased with a portion of their deposits and accumulations. In considering this question, it is not material to inquire whether all this real estate is necessary and convenient for the bank. The court find in this case that all of this real estate is convenient for the bank, but that it is not all necessary for the management of the affairs of the bank. But we think that is a question which the city of Portsmouth are not called on to decide before they can assess their tax.

If the trustees of the bank have gone beyond their chartered rights in that respect, the State may perhaps inquire concerning it; or, if they are misapplying the deposits in the bank, the depositors may take measures to rectify that error: but that is a matter about which the selectmen or assessors of towns or cities can be presumed to know nothing, and concerning which the law does not require them to inquire or to decide. If the real estate of a savings bank is liable to taxation at all, then it would all be liable to be valued as other real estate in the same town, whether the same were necessary and convenient, or only convenient; nor would the selectmen be limited to the amount which the bank by their charter were authorized to hold,

because the assessors could not be presumed to know anything about such provisions; and if they did, it would make no difference, for the bank could not claim exemption from taxation on any property they might own if otherwise liable, by asserting that they had violated their charter in purchasing it. So, then, whether the estate be worth $6,000 or $16,000 is entirely immaterial; or whether the same is necessary and convenient or only convenient, or not even that, would not concern the assessors, and is not material to this inquiry.

In *Savings Bank* v. *Nashua*, 46 N. H. 389, which was decided in 1866, but which case arose upon a tax assessed in 1864, it was held that real estate belonging to a savings bank is taxable to the bank in the town or place where the real estate is situated; but the majority of the court held that if a savings bank own stock in another corporation, the bank is not taxable for such stock in the town or place where the bank is situated; and this upon the ground that it would be a double taxation, because the depositors were taxed for the whole amount of their deposits, and these deposits having been paid out for and invested in this stock, it would be paying a double tax on the deposits to tax them first to the depositors and again to the bank; and upon the ground (see p. 398) that " it is a fundamental principle in taxation, that the same property shall not be subject to a double tax, payable by the same party, either directly or indirectly;—and where it is once decided that any kind or class of property is liable to be taxed under one provision of the statutes, it has been held to follow, as a legal conclusion, that the legislature could not have intended the same property should be subject to another tax, though there may be general errors in the law which would seem to imply that it was to be taxed a second time."

And on page 399, PERLEY, C. J., in delivering the opinion of the majority of the court, says,—" I have no doubt that this provision of the statute" (Rev. Stats., ch. 42, sec. 1), "to avoid the injustice of double taxation, was intended to reach all cases where, by the general law, the property of corporations is taxed to the beneficial owners in the towns where they reside, and a part of the property, like land, is taxable to the corporation, and that, on proper application, it would have been the duty of the assessors in the present case to deduct the value of the land taxed to the corporation from the aggregate value of the deposits taxed to the depositors."

Upon examination of both the opinions delivered in that case, I find no reference made to a provision in the law of 1853 upon the subject of double taxation, though BELLOWS, J., refers to another provision of the same law, on page 407 of his opinion. The provision to which I refer is the proviso in sec. 2 of ch. 1419 of the laws of 1853, and is as follows: "*Provided*, that neither this act nor the laws of this State shall be so construed as to cause any corporate stocks or other property to be twice taxed." Whether this applies to other *corporate* property, or to other property generally, makes no difference in this case. Land is property, and, in case of savings banks, the real estate owned

by the bank is corporate property, and is within the terms of this proviso.

This provision is substantially reënacted in Gen. Stats., ch. 49, sec. 7; for though in the General Statutes it is provided that "no statute provision shall be so construed as to subject any stock to double taxation," yet it appears from the report of the commissioners, who revised the statutes, that they did not intend to change the law of 1853, but that the only change they intended to make was one merely verbal, without any alteration of the sense (see Report of Commissioners, ch. 50, sec. 7).

But supposing the General Statutes be construed to apply simply to *stock* in a corporation, we see no reason why deposits in a savings bank should not be considered as stock, so far, at least, as that, if it has once been taxed to the bank as stock or deposits, it should not be again taxed as real estate; for PERLEY, C. J., in the opinion of the court (page 399), says,—"the depositors of savings banks are the beneficial owners of all the property held for them in a corporate trust by the banks. They own the whole property and capital in shares proportioned to the amount of their respective deposits, as much as the shareholders or stockholders in any other corporation"—showing that he considered the deposits in savings banks to be stock in a corporation in fact, though it may not be in name, just as much as shares in any other bank. We can, in fact, see no real distinction that would be material to the inquiry in this case.

But this is not all. The law, since the decision in *Savings Bank* v. *Nashua*, has been radically changed. Then, the deposits above a certain amount were to be taxed to the depositors, the same as bank stock was to be taxed to the owners of such stock; but now, by Gen. Stats., ch. 58, sec. 13, as amended by ch. 4, sec. 2 of the act of 1869, it is provided that "every savings bank shall pay annually, on or before the 15th day of June, to the State treasurer, a tax of one per cent. on the whole amount so returned as aforesaid to the State treasurer; and no other tax shall be assessed on said deposits and accumulations, or against its depositors on account thereof."

This does not stand upon the same ground as the half of one per cent. which banks are to pay to the State for a literary fund. "This is not named or assessed as a tax * * * and has more the character of a bonus, voluntarily paid for the right to exercise the privilege of banking, than an ordinary tax." PERLEY, C. J., p. 399.

But in case of savings banks, the one per cent. is named and specified as a tax, to be assessed upon the bank; and it is specially provided that "no other tax shall be assessed upon the same property to the bank or to the depositors." This is explicit and certain. The case finds that the treasurer had made his return of all the deposits and accumulations in the bank on the first day of April, 1870, including the amount paid for this real estate, and had paid his one per cent. on the whole amount to the State, and that the State had paid back to the

city of Portsmouth the full amount due to her, according to the provisions of the statute.

In the case of banks of circulation, the fraction of one per cent. is paid to the State, not as a tax, but as a royalty or bonus, for the privilege of doing banking business in the State, and to constitute a fund to be applied to the benefit of education; and all the stock is then taxed to the owners thereof, like other property.   In the other case, the one per cent. is assessed specifically as a tax, and, when paid to the State, is to be distributed to the several towns where the depositors reside, in proportion to the amount of deposits owned in such town, much after the manner of assessing our railroad taxes, and having them all paid to the State, and then contributed to the towns in which the railroad stock is owned.

So, in this case, the tax is assessed as a tax, is paid to the State, and then distributed to the towns where the stock or deposits are owned. In the case of railroads, all their real estate, such as road bed and depots, and such as is necessary for the running and operating the road, is taxed to the road, and is not taxed as real estate in the towns where it is located; and by the same rule such real estate as is necessary for managing the business of the bank, and which has been purchased with the deposits and accumulations of the bank, may be taxed to the bank; and having paid in that way one tax, the statute is peremptory that no other tax shall be assessed upon the same property.   The special provision in regard to savings banks forbids it, and the general provision " that no statute shall be so construed as to subject any stock to double taxation, is, as we have seen, broad enough to cover the same ground.

We do not overlook the general provision of the statute, that "real estate shall be taxed in the town where' situate, to the person claiming the same.   Gen. Stats., ch. 50, sec. 11.   Nor do we doubt the propriety of adhering to that rule as a great leading and governing principle in legislation.   But in this case the legislature has provided explicitly that the treasurers of savings banks shall annually, on, &c., " transmit to the State treasurer a statement, *under oath,* of the *amount of all deposits and accumulations* in their respective banks on the first day of April next preceding;" and that every savings bank shall pay annually, on, &c., to the State treasurer " *a tax of one per cent. on the whole amount so returned 'as aforesaid* to the State treasurer; and *no other tax* shall be assessed on said deposits and accumulations, or against its depositors, on account thereof."

The treasurer is to return the amount of all deposits and accumulations of every kind—no matter how invested, whether in real estate or otherwise, *all* is to be returned—and the tax of one per cent. is to be paid upon the *whole amount* so returned; and *no other tax* is to be assessed on said deposits or accumulations, or against its depositors, on account thereof.   This last provision is in accordance with the "fundamental principle in taxation, that the same property shall not be subject to a double tax, payable by the same party, either directly or

indirectly ; " and when it is once decided that any kind or class of property is liable to be taxed under one provision of the statute, it follows, as a legal conclusion, that the legislature could not have intended that the same property should be subject to another tax.  46 N. H. 398.

When we apply these principles to the statute before us, we can have no doubt that the legislature intended that the tax of one per cent. should be in full for all taxes upon the same property, in whatever form it might exist, and that they intended to make this case an exception to the general rule of taxing real estate in the town where situated, as they had long ago made a similar exception in case of railroads.  They might as well have provided that the real estate of the bank should be taxed where located, and that this amount should be deducted from the whole amount of deposits and accumulations, and the tax of one per cent. should be assessed upon the residue; but they have made no such provision in this case.*

We think this tax, upon the facts found by the court, was not properly assessed upon this real estate in Portsmouth.  It does not appear whether all these facts were made known to the assessors when this tax was assessed, nor is that material.  Should it now be made to appear that this whole real estate was taxed as deposits and accumulations of the bank, as the court has found the fact to be, and that said tax has been fully paid, it should not again be taxed, either to the bank or to the depositors ; and if said property has been thus improperly taxed a second time, it would constitute a sufficient cause for abating such tax, upon a proper application for that purpose.

We see no ground upon which this bill can be sustained as a bill in equity, because the parties have a plain and adequate remedy at law, upon an application for the abatement of this tax.  Ordinarily the bill would be dismissed at once for that reason, but, upon examining the bill, one of the prayers which it makes, among others, is, that this tax may be abated.  We see no reason why we may not properly, therefore, disregard the other prayers in the bill, and consider it simply as an application for the abatement of the tax, upon the grounds stated in the bill, namely, that it was illegally assessed.

It was held in Massachusetts, in *Osborn* v. *Danvers*, 6 Pick. 98, under their statute, which only authorized an abatement of taxes when there had been an over-valuation and assessment, that the plaintiff, who had paid his tax pursuant to a warrant to the collector, could not bring assumpsit to recover back such part as was assessed upon the over-valuation, but must resort to his remedy under the statute, by a petition to the assessors for an abatement.  The same doctrine is held in *Boston Water-Power Co.* v. *Boston*, 9 Met. 199, and in *Howe* v. *Boston*, 7 Cush. 273 ;—and in *Brewer* v. *Springfield*, 97 Mass. 152, it was held, in case of an illegal assessment, where an application for abatement would not

---

* This statute was amended in June, 1872, so as to make the real estate of savings banks taxable where located.          REPORTER.

lie under their statute, that the court had not jurisdiction in equity to enjoin the city or its collector against collecting the tax, because there was an adequate and complete remedy at law; that, until the plaintiffs had been compelled to pay the tax thus illegally assessed, they had suffered no wrong, and that when they had paid it they could recover it back in an action at law, and that there was no occasion to resort to equity.

But our statute in relation to the abatement of taxes is much broader than that of Massachusetts, above referred to. It is not confined to cases of over-valuation, but applies alike to cases where the whole assessment is illegal, and is as follows: "Selectmen, for good cause shown, may abate any tax assessed by them or their predecessors." Gen. Stats., chap. 53, sec. 10. And sec. 11 also provides, that if they (the assessors) "neglect or refuse so to abate any person aggrieved, having complied with the requirements of sec. 4 of chap. 52" (meaning chap. 51—see Commissioner's Report), "within nine months after notice of such tax, and not afterward, may apply by petition to the supreme court in the county, at a trial term, who shall make such order therein as justice requires."

There can, therefore, under our statute, be no occasion for a bill in equity in such a case as this. The statute remedy is ample and perfect, and applies to all cases; and if it should be held that the statute remedy is not the sole remedy that can be used in such cases, yet, upon the authority of *Brewer* v. *Springfield*, 97 Mass., before cited, an action in assumpsit at common law, or an action of trespass for taking the distress, where distress is made, would be entirely adequate in case the tax had been collected where the assessment is held to be, as in this case, unwarranted and illegal. And, in fact, in this case no action of law could be maintained, as the tax had not been collected by distress or otherwise.

The only remedy here is the application for abatement, and this bill may be treated as such application, made to the court, which may perhaps be maintained (if not in its present form, at least by means of an amendment), provided it is found that the provision of section 11 of our statute has been complied with. There is nothing before us from which that fact can be established. This case may be discharged, and that fact found at the trial term where this petition is pending. The main question which the parties desire to have settled here, we presume, is as to the liability of the bank originally to pay this tax; and, that being settled, the other questions can be disposed of at the trial term;—and if it shall be found that the application was not seasonably made to the selectmen, then the question whether the plaintiff may have leave to apply after the expiration of the nine months from the notice of the tax for any special reason—such as accident, mistake, or misfortune, or the like, if there is any room for such a question under our statute—can be settled when it arises.

*Case discharged.*