## COLEMAN BROS. CORPORATION v. CITY OF FRANKLIN.

### Civil Action No. 314.

District Court, D. New Hampshire.

Jan. 5, 1945.

Robert Upton, of Concord, N. H., for Coleman Bros.

Normandin & Normandin, of Laconia, N. H., for City of Franklin.

MORRIS, District Judge.

This is an action brought by Coleman Bros. Corporation of Massachusetts against the City of Franklin, New Hampshire seeking to recover taxes paid by it for the years 1940 and 1941. The action was brought May 17, 1944.

The salient facts set out in the complaint are that the City of Franklin, by its assessors, made an assessment on plaintiff's machinery April 1, 1940, in the sum of $7,700 and April 1, 1941 in the sum of $4,557; that the plaintiff, under protest, paid the City of Franklin the sum of $7,700 on November 22, 1940 and the further sum of $4,557, also under protest, on November 17, 1941. It is these sums that the plaintiff seeks to recover back in this action.

In the Flood Control Act of 1936, § 5, 49 Stat. 1572, the construction "of a system of flood-control reservoirs in the Merrimack River Basin for the reduction of flood heights in the Merrimack Valley generally" was authorized and the Secretary of War directed "to cause preliminary examinations and surveys for flood control at * * * Merrimack River." Act of June 22, 1936, § 6, 49 Stat. 1592. The Chief of Engineers of the War Department as of May 18, 1938, submitted a report to Con-

gress recommending a comprehensive plan for the control of floods in the Merrimack Valley based on the construction of several reservoirs, including the Franklin Falls Reservoir.

This comprehensive plan for flood control was approved and authorized by the amendment to the Flood Control Act enacted in 1938, 52 Stat. 1215, 33 U.S.C.A. § 701b et seq. The construction of the Franklin Falls project was commenced in 1939.

In 1936 the United States acquired by deed land on the east and west side of the Pemigewasset River covering land at the site of the proposed dam from the following persons: A. Maria Atwood, David Atwood Estate, Harry G. Atwood, David W. Lynn, Ethel B. Mayall, Fred L. Hill, Katherine Plizga, Joseph Plizga and Antoine Mazur.

The plaintiff on September 6, 1939, entered into a written agreement with the United States for the construction of the flood control dam and were assigned a work area on the premises so purchased. The plaintiff commenced work on the dam in the fall of 1939. Prior to April 1, 1940, it constructed on the Mazur land, so-called, and within the work area, an office building, repair shop and other structures. These buildings were within an enclosure set off by a wire fence, the area of which was used for the storage of equipment when not in use.

The plaintiff also constructed a sand and gravel pit processing plant on the Fred Hill land, so-called, which was also within the work area. The plaintiff's equipment employed in the construction of the dam consisted of power shovels, earth movers, tractors, rollers, compressors, pumps and other portable machinery.

The New Hampshire Legislature, by Act of May 17, 1939, which took effect May 31, 1939, gave consent of the State of New Hampshire to the acquisition of any land or interests in land required by the United States for the Franklin Falls Reservoir retaining only "concurrent jurisdiction with the United States in and over any such lands to the extent that all civil and criminal processes issued under authority of this state may be executed thereon in the same way and manner as if this consent had not been given." Laws of 1939, Ch. 149, Sect. 1.

In late April 1940, Mr. Gerry of defendant's Board of Assessors, called at the plaintiff's office and presented the usual inventory sent to taxpayers with the request that it be filled out and returned to the assessors. Gerry was informed by plaintiff's manager that he was in doubt as to whether the property was taxable and that no action would be taken without advice from the Boston office. The inventory form was forwarded to the Boston office and later returned to the assessors with a letter stating that: "We believe after due investigation, that our equipment on our job at Franklin, N. H., is not taxable by the City of Franklin because of the fact that we are performing construction work on a United States Army Reservation."

Finally, on May 16, the assessors again visited the plaintiff and were shown the buildings and equipment and an inventory was returned listing "equipment and buildings on the site of the flood control dam of the value of $200,000." This was accompanied by a letter of protest.

The assessors as of April 1, 1940, assessed against the plaintiffs, taxes in the sum of $7,700 upon the buildings and equipment valued at $200,000. The plaintiff received a tax bill in August and on November 22nd forwarded to Harry F. Davis, Tax Collector, a check for the amount together with a letter of protest as follows:

"Franklin, New Hampshire,
"November 22, 1940.
"To the Collector of Taxes
"City of Franklin,
"Franklin, New Hampshire.
"Dear Sir:
"We are delivering to you with this letter our check for $7,700 in payment of taxes assessed to us by the City of Franklin on equipment located at the Franklin Falls Dam, as per attached tax bill.

"This payment is made under protest and for the purpose of saving the company from any penalties, the personal property on which the tax was levied being located on real estate which is the property of the United States and said personal property not being taxable by said City, and we hereby expressly disaffirm and deny any right of said City to tax said property.
"Very truly yours,
"Coleman Bros. Corporation."

On April 15, 1941, the plaintiff again filed an inventory showing buildings and equipment valued at $147,600, together with a letter protesting the authority of the assessors. Upon this inventory a tax was as-

sessed as of April 1, 1941, in the sum of $4557 which was paid under protest Nov. 17, 1941.

It is these sums so assessed and paid which the plaintiff is seeking to recover in this action. No taxes were assessed against the corporation thereafter although the dam was not completed until October 1943.

The property so assessed as of April 1940 was personal property all located on land acquired by the United States in 1939. On April 1, 1941, the plaintiffs had no equipment outside the government land, except, possibly, a crane and a compressor employed in the construction of a bridge over a channel on the Lynn land onto the railroad right of way. There was some evidence that unregistered machinery and equipment was seen on the right of way that the plaintiff obtained from Maria Atwood and upon the old abandoned highway and that plaintiff's trucks were used in conveying borrow from a pit in the town of Andover. Equipment seen on the Atwood right of way and the abandoned highway was equipment in use having no situs outside the working area. Trucks and other equipment transporting borrow from the town of Andover were trucks permitted to be used on the highway and taxed under the Motor Vehicle Act with which we are not interested.

■ The testimony tended to show and I find as a fact that the plaintiff complied with the requests of the assessors of the City of Franklin in filing its inventory and paying the taxes assessed prior to December 1 each year under protest to avoid the penalties prescribed in Chapter 75, section 13, of N.H.R.L., relating to doomage, the payment of ten per cent interest or the possible distraint and sale of its property as prescribed in Chapter 80 of the N.H.R.L. Atchison, T. & S. F. Ry. Co. v. O'Connor, 223 U.S. 280, 32 S.Ct. 216, 56 L.Ed. 436, Ann.Cas.1913C, 1050.

The defendant's claim is that the tax assessment was a judgment which cannot be collaterally attacked and that the plaintiff's only remedy was by application to the assessors for an abatement which must be filed within six months. Its position is that no application for abatement having been made and more than six months having elapsed, that plaintiff has lost its remedy and that there should be judgment for the defendant. A leading case in New Hampshire is the Edes v. Boardman, 58 N.H.

580. Since the decision in the Edes case the cases are numerous to the point that the only remedy for abatement of taxes is by application to the assessors for an abatement. Rockingham, Ten Cent Savings Bank v. Portsmouth, 52 N.H. 17; Larkin v. Portsmouth, 59 N.H. 26; Bradley v. Laconia, 66 N.H. 269, 20 A. 331; Town of Farmington v. Downing, 67 N.H. 441, 30 A. 345; Rowe v. Hampton, 75 N.H. 479, 76 A. 250; Nottingham v. Newmarket Mfg. Co., 84 N.H. 419, 151 A. 709; Bretton Woods Company v. Carroll, 84 N.H. 428, 151 A. 705; Lefevre v. Healey, 92 N.H. 162, 26 A.2d 681.

■ It appears to be well established in this state that relief from an illegal assessment or over-assessment of a tax is by petition for abatement. The statutory remedy is exclusive.

The Legislature has made a distinction between individuals and corporations and had provided in R.L. Ch. 74, sect. 3, that the "taxable property of corporations and property taxable to corporations, shall be taxed to the corporation by its corporate name, in the town in which it is located, except where other provision is made." In Scribner v. Wikstrom, 93 N.H. 17, 34 A.2d 658, 659, the court in construing section 1 of chapter 149 of the Laws of 1939 said:

"Whether a state has power to tax land acquired by the United States in accordance with the provisions of Art. 1, § 8, cl. 17, of the Federal Constitution, or to tax property situated thereon, depends upon whether the power of the state to so tax is reserved in the legislative enactment granting consent to the acquisition. James v. Dravo Contracting Company, 302 U.S. 134, 147, 58 S.Ct. 208, 82 L.Ed. 155, 114 A.L.R. 318, and cases cited; 1 Cooley, Taxation, 4th Ed., § 92, pp. 220, 221. And since the power to tax was not reserved by chapter 149 of the Laws of 1939, it follows that the town of Webster could not legally tax the defendant's property on April 1, 1941, if the United States had acquired the land on which that property was located prior to that date."

■ As no reservation was made permitting the taxation of the property used in the construction of the Franklin Dam when located on property of the United States, it follows that it was not taxable by the City of Franklin. Surplus Trading Co. v. Cook, 281 U.S. 647, 649, 50 S.Ct.

455, 74 L.Ed. 1091. The tax being illegal, the question is whether the only remedy for its recovery is that provided by the statute.

The difference between the case at bar and those above cited is one of jurisdiction. The assessors of the City of Franklin have no more jurisdiction over plaintiff's property located on land of the United States than it would have over like property in the State of Maine.

I hold that the assessors of the City of Franklin had no jurisdiction over the plaintiff corporation or its property.

The want of jurisdiction in any tribunal renders its proceedings void and when the want of jurisdiction is shown by the record and proceedings themselves, it may be taken advantage of at any time.

The lapse of time between the assessments and payments is a rather disturbing element to me in this case. However, as I find that the City of Franklin has illegally obtained and is now holding the amount of money exacted for taxes belonging to the plaintiff, I cannot see how that any lapse of time short of the statute of limitations has transformed an illegal transaction into a moral or legal right.

I am therefore constrained to hold that the plaintiff have and recover the amount so paid and held by the City of Franklin without interest.